And we'll turn to the next case on the calendar, which is U.S. v. Ruben Pizarro. Good afternoon. May it please the Court, my name is Joseph Martini. I'm here on behalf of Mr. Pizarro. We raised a number of issues in our brief, as the Court knows, but I'd like to start with the issue that we raised with respect to premeditation and whether premeditation is an element of the offense that's charged in Count 2 of this indictment, which charges a violation of Section 924J. As the Court knows, the statute itself and the indictment in this case charged 924J with a reference solely to the federal murder statute, 18 U.S.C. 1111, without distinguishing between whether the charge was a premeditated murder or a second-degree murder. It simply charged the statute. But the way we see the record and the way we've argued this to the Court is that the element of premeditation and the concept of premeditation, which takes, which distinguishes, at least under federal law, second-degree murder and first-degree murder, that the issue of premeditation was introduced into the case, starting with the government's proposed instructions to the jury. And in those proposed instructions to the jury, the government proposed an instruction that defined murder by reference to Section 1111 without reference to whether what was being proposed to the Court was first-degree or second-degree murder. And what happened there is that that carried forward to the Court's charge, and this is at pages 72 and 73 of the appendix. It carried through to the Court's charge when the Court charged the jury specifically as to the fourth element of the offense. When the Court was describing the elements of the offense for Count 2, the indictment, as to the fourth element of the offense, the Court charged that the jury had defined that the death of that person qualified as a murder, as I will define that term for you in a moment. And then the Court, and this is at page 78 through 79 of the appendix, proceeded to give the jury a definition of murder which carried forward from the government's proposed instruction in which the Court basically read a large part of Section 1111 without any delineation about whether what the Court was talking about was first-degree murder and significantly charged the jury by defining and reading the definition using the word premeditation. So what I would say to the Court to the Court. Sotomayor, I'm a little confused. I thought you were identifying charging error by the district court. Did I misunderstand that? We are, Your Honor, but we're saying that the court fed that first the premeditation was an element of the offense. But it charged what you think it was favorable to you. No, it introduced the concept of premeditation by defining that as an element. When it read the definition of murder, let me just back up one step. Sotomayor, I've read these two. You didn't ask for any charge on this. So now you're telling us that the judge introduced the premeditation requirement in its charge, and but you're saying that therefore the government had to prove it because the judge charged it? Yeah, I'm saying yes, exactly. If this was a second-degree murder case or any other sort of degree of murder or whether the court or whether the government wanted to leave it to the sentencing judge to determine whether this was a first- or second-degree murder. I'm not sure. If the judge charged an extraneous element that the government did not in fact have to prove, how does that heighten their burden? But there's no indication that this is an element that the government didn't have to prove. They didn't charge first- or second-degree murder in their indictment. But then they. Sotomayor, either first- or second-degree murder qualifies under 1111? Are you disputing that second-degree murder would be covered? Second-degree murder would be covered. Right. If that's the case, if that's the case, why was their burden anything higher than what would satisfy second-degree murder? Because they, because they allowed the court to charge the jury that an element of the offense was murder as the court defined. And if this was just a second-degree murder case, Your Honor, I would say that the judge's charge on this fourth element would have stopped with the first sentence of 111, which is the definition of murder, which is. Now, so let me go back to my original question. I thought you were alleging charging error. And now I'm not sure what the charging error is, because you're saying the judge correctly charged or charged premeditation, and now the government had to prove it. So what's the charging error? The charging error, Your Honor, is that the court mentioned premeditation in its description of element number 4 of the offense and then did not charge premeditation. For example. If it wasn't required to at all, how is that error? Well, we're saying the concept of premeditation was introduced into the case by the way that the court defined the element of murder. If this was just. Well, that means you got a benefit, not that you got harmed. No. Because once you introduce premeditation into the case, I submit that that changes everything, because the charge on premeditation, which I've got a copy of, a charge that Judge Droney gave in the Corbett case that we cited in our brief, the charge on premeditation is an act is done with premeditation if it is done upon planning or deliberation. In order to satisfy this element, the government must prove that the defendant killed the victim only after thinking the matter over, deliberating whether to act before committing the crime. And then it goes on. It doesn't have to be long, right? There are some case law that says it doesn't have to be long. Sotomayor, I only say this because there's a tape in which your client is standing over the body on the street, pumping the bullets into him. And it strikes me as difficult to argue that this and the chase started without any, without any instigating factor at the time. The only instigation was events that had happened sometime in the past. So how does this not satisfy premeditation? I think, Your Honor, that the ball can bounce either way. Once you introduce premeditation into the case and you go through the factors, and I agree that the amount of time can change, but when you start talking to the jury about whether there was planning, direct, evidence of an advanced intent to kill, planning, preconceived design, a search, planning and searching out for the victim, somebody that had a cool mind and had a chance to reflect. The defense make these arguments to the jury? The defense did not make these arguments to the jury. But this is part of the problem. You didn't challenge the charge at the time. You didn't even argue to the jury that the facts wouldn't be enough to establish premeditation. And yet now you're making these arguments to us now, starting with your initial concession that but for this charge, the government wouldn't have had to prove premeditation. But I think at the time, Your Honor, the trial counsel was focused on this being a sentencing issue, quite frankly. And that's basically, if you look at some of the colloquy with the court, they were talking about whether this was a sentencing issue. But when it got to the point of actually charging the jury, I don't know how you would Without an objection, you're into plain error. And I'm not sure how you can show plain error if the end result is the government This is not, in fact, an element of the crime. I've got to Can you just tell me how it's plain error once you acknowledge that it's not an element of the crime? Well, it can only be plain error if it is an element of the crime. And if it is an element I thought you acknowledged that 1111 is not limited to first-degree murder. It's not. Okay. It's not. It covers both. But if you're going to charge it as second-degree murder or first-degree murder, there's a way to do it. For example, if the court really wanted, if this was a second-degree murder case, all the judge had to do and all the government had to propose was to read the very first sentence of that statute. That's the definition of murder, the Federal definition. Every other aspect of that definition, including what the court read, which included the word premeditation, relates to first-degree murder. That's the argument, Your Honor. If I could just mention two other points. They're covered pretty extensively in our brief. In addition to the premeditation point, which we raised, which we've been discussing, we make two other points. First, the point about there being a required nexus between the gun that was used to shoot Mr. Rivera and drug trafficking, the court knows. And it's obvious that there's – it's broad. There's a broad swath of conduct that's covered by 924C in the concepts of during and in relation to or in furtherance of. But I think there are limits, and our brief argues that there are limits to that scope. And those limits are, as in this case, when there was no evidence of drug trafficking at the time of the shooting. And, in fact, there was no evidence of drug trafficking in the three weeks prior to the shooting because the – Presumably they were in hiding. I mean, what is your timeframe? It's that they weren't – suppose they weren't selling drugs on that day. How far – what is the circle in terms of – I think it gets to be speculated. I mean, it's three weeks back. In this case, we know it's three weeks back, that there was no drug trafficking on these two blocks. And at the time of the shooting, you go back three weeks, there was nothing going on. But there's also no evidence that they intended to resume trafficking. And I think it would be speculative to say, well, they must have decided to go back after the heat was off. The district court pointed to some testimony in the record that either one or both of the co-conspirators had indicated a desire that – or testified that the conspirators intended to resume. We've looked at the record, and we didn't see that testimony. We saw one snippet of testimony from one of the co-conspirators who said that, yeah, well, he personally would have liked to have gone back to drug trafficking. But I think that's a stretch to go from that snippet of testimony to the district court's conclusion that the conspirators intended to resume. What's your theory? The jury couldn't infer it, that basically the only inference from the evidence was that they had basically retired? I think it's – I think that would not be – that's an argument to the jury, I suppose. But to me, it's speculative about whether the – just because they were dealing drugs for a particular period of time, this murder happens and they go back out is speculative as to who does it, what the conspiracy is going to exist – consist of, whether it would be the one that's charged in the indictment. What's your theory about – I mean, my recollection is there was no defense case. But what's your theory about why they were in hiding to begin with? They were in hiding because they were fearful of being shot by each other. And that was because of their drug trafficking. That was because of their – well, it could be because of their drug trafficking or it could be just because Pizarro had a problem with Rivera. And, you know, unfortunately that problem was resolved. And I think – I hear Your Honor's point, but I think a response to that is it would be speculative to ask the jury to conclude that the drug trafficking would have continued after the murder. Why the law doesn't presume that a conspiracy ends just because it's abated for a discrete period of time. A lot more is required to show that a conspiracy – that your client would have withdrawn from the conspiracy. But the – So why is – why doesn't that allow the jury to assume that they were in hiding because they were afraid they were going to get killed by a rival drug gang? And when they saw one of the rival drug gang people, they shot him dead because they needed to eliminate these folks to resume their activity. They weren't interested in remaining in hiding forever. Well, the case – I mean, we are now not talking about our engaging in any fact finding. We're talking about whether a reasonable jury was precluded from so finding on this record. Well, first of all, the cases that I think Your Honor are talking about in which the government cites talk about withdrawal from the conspiracy, where I believe those cases all arise in the context of a statute of limitations defense or something along those lines, where the burden is – Well, that's often the context, but the point is there was no requirement that the jury find that this conspiracy was over. The record doesn't show withdrawal or anything that would have compelled a finding that the conspiracy was over. Well, the government had to prove that it continued. That's – that may not – there's a presumption that attaches to conspiracies in these circumstances. Isn't that right? There may be in the context of the cases that Your Honor is mentioning where you've got to show an affirmative act of withdrawal and do something to clearly remove yourself from the conspiracy. But I think when you're talking about a sufficiency of the evidence argument and you've got – The jury finds that he kills him dead, kills the rival dead. The jury could certainly find that's a continuation of the conspiracy. We've just eliminated the competitor. Okay. Mr. Martini, this question may be better directed to the government, but you were not counsel in the district court. We were not, Your Honor. Are you familiar with U.S. v. Capers, C-A-P-E-R-S? We've cited it in the brief, Your Honor, yes. And I understand just – I'm generally familiar with the Capers decision and what issue may be before the court in that case as it relates to the premeditation element, if that's where Your Honor is going with that. Right, exactly right. I think, and I may be wrong about this, but I think that the argument in that case – and the government may know better – but I think the argument in that case is just generally whether under 924J, when it incorporates 1111, whether that means that premeditation is an element of the offense. I think that may be the general proposition in that case, which is a little different than the argument that we're making here, which is something similar to a case where premeditation is actually charged in the indictment. Because here, as I was talking in response, as I was saying in response to Judge Radji's questions, our position is that premeditation was injected into the case, not that it exists without some sort of charge or some sort of mention during the course of the jury instruction. So I think that's the distinction. But I think that issue is before the Court now. But this one is different, I think, only because of the jury instructions that we're pointing to. Thanks very much. Thank you, Your Honor. All right. We'll hear from the government. You've reserved two minutes, Mr. Martin. Good afternoon, Your Honors, and may it please the Court. My name is Shawn Crowley. I represent the government on appeal, and I also represented the government in the proceedings below. Ruben Pizarro shot and killed David Rivera on November 24, 2015, in broad daylight in front of a daycare center in the Bronx. The murder was cold and calculated and certainly premeditated. It was the culmination of a years-long rivalry between Pizarro and Rivera and his drug crew, and it followed what the district court referred to at sentencing as a spree of violence that played out in numerous shootings back and forth in October and November of that year, when Pizarro and his crew set out to take over the drug territory on Arthur Avenue in the Bronx. It was a drug war. One of the cooperating witnesses testified in those exact terms repeatedly at trial. And the murder, as Judge Raggi pointed out, was Pizarro's attempt to end that war, to win that war, by eliminating his drug rival, David Rivera. I'm going to respond first to the premeditation argument that counsel has made here. Judge Raggi is absolutely right. Premeditation is not an element of a 924J charge. The Judiciary Court was not required to define it in its charge, and we certainly were not required to prove it. But we can't prove it. Sotomayor, your suggestion is that your own request to charge introduced the element. Is that correct? Your Honor, what our charge, what our request to charge did, which, as Your Honor pointed out, defense counsel below did not object to. In fact, they did not. I'm just trying to find out, was it the government that urged the trial court to charge premeditation, to even discuss premeditation with the jury? It was, Your Honor. Our proposal was just that the judge read the language of Section 1001.1.1, which is, of course, the definition of murder that's incorporated into 924J. What didn't get read, and what I'm trying to find out, if you asked to have charged, was the very last sentence that says, anything else is second-degree murder. That was not read, but the judge. Did you ask for it to be read? No, Your Honor, we didn't. So we're back to my point. You asked the judge to charge this only in terms of premeditated murder. Well, but, Your Honor, the next part of the charge, when the district court is defining malice, it's clear. The district court says intentional murder. There's no requirement that this murder be intentional. It can instead be reckless or wanton conduct with disregard for human life. Can I ask you a question that I'm curious about? The first sentence of 111 or 1011a says, murder is the unlawful killing of a human being with malice of forethought. What is the difference between malice of forethought and premeditation? Your Honor, I think that's the point that I was just trying to make. I'm sorry. No, no, of course. Malice of forethought doesn't require intention that the person be killed. It requires reckless conduct or wanton disregard for human life. The district court did instruct that. In any event, the evidence here was absolutely overwhelming that this murder was premeditated. As Judge Radji noted, there's video of Pizarro shooting Rivera again and again, even after he falls down and tries to get back up. But the evidence began, the evidence that this was premeditated began long before that. There were shootings back and forth between Rivera and Pizarro for years. On the morning of the actual murder, Pizarro spotted Rivera. He was told by his co-conspirator, Nathaniel Torres, leave it alone. He said no. I'm going to get back at him essentially for the shootings earlier in the month. He crouched behind a car, cocked his gun, and then chased him down the street, shooting him in the back repeatedly. As the district court found at sentencing when the same argument was made with respect to the guidelines on the drug count, this was the most premeditated of murders. So, Your Honors, with respect to the argument on the drug nexus, I think Judge Radji is absolutely right. There was absolutely no evidence that this conspiracy ended. And, in fact, the murder itself is plainly sufficient evidence from which the jury could infer that this conspiracy, that Pizarro and his co-conspirators intended to, after they eliminated their rival, go back to the block, retake the drug territory, and continue selling. There were periods, there was testimony at trial that there were periods on and off throughout years in which Pizarro would come to the block, start selling drugs, engage in violence with the Hughes Avenue crew, of which David Rivera was a member, and then leave for a while or stop selling for a while when the block got hot. He would then come back again and reengage. This is exactly what happened in August of 2015 when he came back, when he started selling drugs, and when the violence started. There were three shootings in a row. Nathaniel Torres testified that he and Pizarro had to get off of the block for a while to protect themselves. They moved together. The two drug sellers who sold every day on the block moved together to a new stash location a couple blocks away. They brought their guns with them, the same guns that they used every day when they were out selling drugs. And when they happened upon their main drug rival, they shot and killed him. So that was plainly sufficient evidence for the jury to infer that the drug conspiracy was ongoing and that Pizarro's use of the gun that day was in furtherance, at least in part, in furtherance of his drug dealing. Can I just read you a definition of malice or forethought from the Cornell University website? It says, If there is a state of mind necessary to prove first-degree murder, the prosecution must prove that the defendant intended to cause death or great bodily harm or exhibited extreme and reckless indifference to the value of life. That is not, Judge Corman, the instruction that the court gave in this case. Here the court said malice or forethought, this murder can be committed without intention that the death actually, that the killing actually take place. That's not a – am I correct? That's not what the judge charged. What the judge charged is the defendant must have acted consciously with the intent to kill another person. However, the government need not prove a subjective intent to kill. It would be sufficient to satisfy this element, the element of acting consciously with the intent to kill, if the government proved reckless and wanton conduct on the part of the defendant which grossly deviated from a reasonable standard of care. So all of that is an explanation of what it means to have acted consciously with the intent to kill, or am I missing something? That's correct, Your Honor. And that was – that is the – But the judge never charged them that they didn't have to find that he acted intentionally. It's just he explained that intentionally could be subjective or it could be inferred from the reckless and wanton conduct. And the judge – and I think, Judge Rogers, you made this point. Am I right that what you stated a moment ago, that he charged them that they didn't have to find intent, is not correct? That's correct, Your Honor. But he didn't have to charge them that. As Your Honor stated, if anything, what we did by submitting this premeditation charge to the jury was increasing our burden, which we clearly met. But the judge didn't have to charge them that that premeditation was not required, even though the statute doesn't require it. You're coming to the end of your time, and I have a question for you about your response to the duplicitous argument that counsel makes. If I understand you brief, you're arguing that it was waived by the failure to raise it before trial, but Rule 12 no longer speaks in terms of waiver. It allows a trial judge, and it's his discretion to hear an untimely argument. So we're not really with waiver here, are we? Well, Your Honor, it was never made before the district court. I understand. And why isn't that then takes us to it was forfeited in the district court, and we deal with plain error then? In any event, clearly the error is not plain here. Okay. So you're saying you would succeed on plain error review? Yes, Your Honor. Okay. Unless the Court has any other questions, I'll rest on submission. Thanks very much. Do you have anything to say, by the way, about Capers? I'm sorry, Your Honor? I'm sorry. I should have asked. No, that's okay. U.S. against Capers. Do you have anything to add? Your Honor, I believe Your Honor was correct that that was the issue in that case was a jury instruction claim that premeditation needed to be charged in a 924J. I don't have much in the way of technical rebuttal, but Your Honor's questions and the comments about the number of firearms just reminded me that we have made a duplicity argument. And to me it was very confusing in terms of hashing through the law on 924C in terms of what is a proper unit of prosecution under the statute and what is not. It seemed to me as I read the record that it's sort of overwhelming that at least the November 2nd killing was committed by your client, which is one of the three that is alleged in the particular count that you claim is duplicitous. And wasn't there ballistics evidence which showed that the gun that was used in that murder was also used to kill, I forget the name of the victim, that he's charged with murdering? I mean, it just seems to me overwhelmingly. I don't know if that cures the concern that we have about duplicity, though. No, no. Well, here again we're reviewing for plain error, aren't we, because this was never raised in the district court? We're reviewing for plain error. So you would have to show that it's basically an affront to the judicial system to allow this conviction to stand. And in light of overwhelming evidence that your client did, in fact, fire the gun on the 2nd, on November 2nd, how could you possibly satisfy that element of plain error? I think you're right. The concern that we're raising with respect to this part of the argument really is preserving the defendant's constitutional right to have a unanimous verdict in this case. No, but that could be, that could be, the reason for the, for the rule of, the reason, one of the reasons for the rule against duplicity is that very concern. And that's why it should be raised timely. But in any event, it seems to me that that concern is obviated here because the evidence overwhelmingly establishes that your client committed at least one of the three murders that you claim are, are, make, make the count of the indictment duplicitous. But there's only one murder. The others are, I'm sorry, one murder. Yes. The others were shootings. You're right. I think in the context of this case, and I, and I get Your Honor's point, but in the context of this case where they're charging what are really three separate offenses in one count, and then going to the jury with a special verdict form, which says you have to be unanimous as to whether the guns were brandished or discharged without tying that special verdict form, which the government has a burden to propose to the court, without tying that to a specific, one of those specific shootings, and then not giving the jury instructions about whether they had to be unanimous about finding which shooting they were finding, brandishing, or discharging in relation to, there's a real concern about a general verdict and, and unanimity. The, the language that you're complaining about in the count of the indictment says, and in the course of that crime, the possession of the weapon did cause the death of a person through the use of a firearm, which killing is murder. I, I, I think, in my view, the indictment probably would have been sufficient if it didn't allege that. Well, that's, I think Your Honor's looking at count two. Yes. Yeah, the duplicity claim arises in the connection of, in connection with count three, which is the, which is the 924C count, where the, where the. In my argument, it's the same thing. It's the same thing. I, the government was just using that language to make it clear. It seems to me, I mean, it's been a long time since I signed indictments, but it seems to me what the government was doing by that language was making it clear that they weren't including in this count, the murder count that was committed. Clearly they carved out the murder. Yes. Yes. And the only purpose in that, that could have stopped if they had said, which was brandished and discharged, they didn't need to list the dates of the other murders. They may not have. Of the other shootings. Yeah. They may not have had to do that. I, I agree with you, but they did. And, you know, the, the argument is that having done that, having, having gone to the grand jury on, on that count and having presented that to the jury without any specific unanimity instructions with respect to what the jury had to find with respect to that count, insofar as those particular shootings are concerned, we believe was the error. You know, the law is that even when the Court fails to charge an element complete, that if the record overwhelmingly demonstrates that the element would be proved if it had been charged, that there's no, no error. And I think that's our concern here is even if there, even if this should have been broken down into the three incidents, on what possible theory could we conclude that a reasonable jury would not be compelled to find your client's discharge of the gun on November 2nd? I, I hear Your Honor's point, but I still, I still think that the, as Judge Cormer pointed out, the whole reason why we're even invoking the doctrine now is to make sure that there's a, it could be waived. No reason it, we're saved from waiver is because there are higher interests at play. And the higher interests at play are, you know, a guarantee that the, the, the jury verdict was unanimous. So I think that's the overriding concern. You may not have waived it because, as I said, Rule 12's been amended. But you had an opportunity to ask for specific findings and you didn't. And similarly, the summation, and I know you weren't counsel below, the summation does not suggest to the jury that there's any concern in this regard. So meanwhile, we look at whether or not the charging error that you're complaining about is harmless. And the, the basis for that is the overwhelming evidence that he shot the gun. But the only thing I would say in response to Your Honor's point about that is, and I get, I get the point, and Judge Cormer knows this from a case from long ago, it was the government's burden to, to present a special verdict for him here. It's not our burden in that, in that particular circumstance.  Why do you think it's the government's burden to provide, present a special verdict for him? There's a specific requirement in Rule 12 that if you're complaining about defects in the indictment, you have to raise it. Well, I'm talking about a different point. I mean, we didn't raise it under Rule 12, clearly. But when you get down, the, the reason why we're even talking about it now is because the cases say that even if you don't present it in the context of a Rule 12 motion, you can still raise it because there are other concerns at, at play. Like, yes, Your Honor. Oh, go ahead. Like unanimity. Thanks very much. Thank you, Your Honor. Very well argued, and we appreciate your, your arguments. Thank you very much.